UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DWAYNE BROWN,

                    Petitioner,

          v.

WILLIAM LEE,

                    Respondent.

No. 14-CV-9718 (KMK)

ORDER ADOPTING REPORT &
RECOMMENDATION

---

KENNETH M. KARAS, District Judge:

Dwayne Browne ("Petitioner") has filed a Petition for a Writ of Habeas Corpus (the

"Petition") pursuant to 28 U.S.C. § 2254, challenging his September 27, 2010 conviction,

following a non-jury trial in Orange County Court, for one count of Course of Sexual Conduct

Against a Child in the First Degree. (*See generally* Pet. For Writ of Habeas Corpus ("Pet.")

(Dkt. No. 1); Mem. in Supp. of Pet. ("Pet'r's Mem.") 3 (Dkt. No. 2).) Petitioner was also

convicted of Course of Sexual Conduct Against a Child in the Second Degree, but on appeal, the

Appellate Division dismissed that count on the ground that it was an "inclusory concurrent count

of the conviction of course of sexual conduct against a child in the first degree." *People v.

Brown*, 962 N.Y.S.2d 245, 246 (N.Y. App. Div. 2013) (citations omitted). Otherwise, the

Appellate Division affirmed Petitioner's conviction. *Id.* On December 4, 2013, the New York

Court of Appeals denied Petitioner leave to appeal. *People v. Brown*, 4 N.E.3d 385 (N.Y. 2013).

Petitioner filed this Petition and a supporting Memorandum on December 10, 2014. (Pet.;

Pet'r's Mem.) Respondent filed a Memorandum of Law opposing the Petition on August 6,

2015. (Aff'n of Andrew R. Kass in Opp'n to Pet. ("Kass Aff'n"); Mem. of Law in Opp'n to Pet.

("Resp't's Mem.") (Dkt. Nos. 10, 11).) Petitioner filed a Reply in Support of the Petition on September 4, 2015. (Reply in Supp. of Pet. ("Pet'r's Reply") (Dkt. No. 12).)

In a Report and Recommendation ("R&R"), Magistrate Judge Lisa M. Smith ("Judge Smith") recommended that the Petition be denied in its entirety. (*See* Report & Recommendation ("R&R") 2 (Dkt. No. 13).) Petitioner filed Objections to the R&R on March 1, 2017. (*See* Pet'r's Obj's to R&R ("Obj's") (Dkt. No. 14).)[1] Respondent has not responded to the Objections. After a review of the R&R and Petitioner's Objections, the Court adopts the result recommended in the R&R and denies the Petition.[2]

## I. Discussion

### A. Applicable Law

#### 1. Review of a Magistrate Judge's R&R

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant

---

[1] There are two docket entries, Nos. 14 and 15, listed as Objections to the R&R, but the content of the two entries is identical.

[2] The factual and procedural background surrounding Petitioner's conviction is recounted in Judge Smith's R&R. (*See* R&R 2–4.) The Court does not find it necessary to revisit that discussion in its entirety here and will reference specific facts as needed.

to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(2).

Where a party submits timely objections to a report and recommendation, as Petitioner has done here, the Court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

### 2. Standard of Review

Petitions for a writ of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). "The writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)). In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam);

3

*see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof.").

A decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision is "an unreasonable application of clearly established Federal law" if a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08 (alterations and quotation marks omitted). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419–20 (2014) (citations and quotation marks omitted); *see also id.* (noting that a petitioner must show a state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quotation marks omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the

court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen*, 563 U.S. at 202–03 ("Even if the [Federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*— we . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir. 1997) ("When reviewing a habeas petition, the factual findings of the New York Courts are presumed to be correct." (alteration and quotation marks omitted)). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same).

Finally, only Federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in

behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

### 3. Procedural Requirements for Habeas Corpus Relief

"Habeas review is an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), and a petitioner seeking a writ of habeas corpus must comply with the strict requirements of AEDPA, *see* 28 U.S.C. § 2254. Before the Court reviews the merits of a habeas corpus petition, the Court must determine whether Petitioner complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.

#### a. Timeliness

AEDPA imposes upon a petitioner seeking federal habeas relief a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The statute of limitations is tolled if any state post-conviction proceedings are pending after the conviction becomes final. *See* 28 U.S.C. § 2244(d)(2). The limitations period is also subject to equitable tolling, which is warranted only when a petitioner has shown "(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstances . . . prevented timely filing." *Finley v. Graham*, No. 12-CV-9055, 2016 WL 47333, at *5 (S.D.N.Y. Jan. 4, 2016) (alterations in original) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

#### b. Procedural Bar

A federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (quotation marks omitted). A judgment is "independent" if the "last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural

bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quotation marks omitted). A procedural bar is "adequate . . . if it is based on a rule that is firmly established and regularly followed by the state in question." *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006) (quotation marks omitted). In "exceptional cases," the "exorbitant application of a generally sound [state procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

### c. Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). To satisfy this requirement, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen. of State of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999).

7

There are two components to the exhaustion requirement. *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . ."). First, "a petitioner [must] fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (alterations and quotation marks omitted); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146, at *5 (E.D.N.Y. July 31, 2012) (same). This requirement is satisfied if the claim is presented in a way that is "likely to alert the [state] court[s] to the claim's federal nature," *Carvajal*, 633 F.3d 104 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)), and the state courts are "apprise[d] . . . of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition," *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005); *see also Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same). In other words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this requirement. *Carvajal*, 633 F.3d 104 (quotation marks omitted). A petitioner may satisfy this requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis[;] (b) reliance on state cases employing constitutional analysis in like fact situations[;] (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution[;] and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* (quotation marks omitted). However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curium) (citation omitted). Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply

controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds*, *Daye v. Attorney Gen.*, 696 F.2d 186, 195 (2d Cir.1982) (en banc); *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011). In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez*, 394 F.3d at 74. If the petitioner fails to exhaust his or her state remedies through the entire appeal process, he or she may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods. *See Klein*, 667 F.2d at 282–83 (noting that, "where the petitioner did not utilize all the appellate procedures of the convicting state to present his claim . . . the petitioner must utilize available state remedies for collateral attack of his conviction in order to satisfy the exhaustion requirement."); *Bernardez v. Bannon*, No. 12-CV-4289, 2016 WL 5660248, at *3 (S.D.N.Y. Sept. 29, 2016). For example, in New York a defendant may challenge a conviction based on matters not in the record that could not have been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10(1), but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's

claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under [New York Criminal Procedure Law] § 440.10."), *adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011). In addition, New York permits only one application for direct review. *See Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under New York law] . . . ."). "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals." *Sparks v. Burge*, No. 12-CV-8270, 2012 WL 4479250, at *4 (S.D.N.Y. Sept 18, 2014).

Accordingly, in those situations, a petitioner no longer has any available state court remedy, and the claims are therefore deemed exhausted, but procedurally defaulted. *See Carvajal*, 633 F.3d at 104 ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim procedurally defaulted." (alteration and internal quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting the reality that deeming an unpresented claim to be exhausted is "cold comfort"). A dismissal of a habeas petition on such grounds is a "disposition . . . on the merits." *Carvajal*, 633 F.3d at 104 (internal quotation marks). "An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted." *Id.* (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) (holding that "a federal court will not entertain a procedurally defaulted constitutional

claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default," or a showing that the petitioner "is actually innocent of the underlying offense").

### B. Application

Petitioner makes four principal arguments in support of his Petition: (1) trial counsel was ineffective for failing to request a pre-trial suppression hearing, known as a *Huntley* hearing in the State of New York, regarding Petitioner's inculpatory statement to the police; (2) to the extent the *Huntley* hearing was incorporated into trial, the trial court failed to sufficiently address the suppression issues on the record, pursuant to *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965); (3) trial counsel was ineffective in failing to move to suppress incriminating recorded telephonic conversations between Petitioner and the victim; and (4) the trial court improperly curtailed the scope of trial defense counsel's cross-examination of the victim. (*See* Pet'r's Mem. 5–10.) Judge Smith denied all the claims. (*See* R&R 19.)

Petitioner objects to Judge Smith's rejection of Petitioner's claims, appearing to argue: (1) that the Appellate Division erred in affirming the trial court's suppression findings and that the trial court's suppression findings were erroneous; (2) that trial counsel was ineffective for failing to object to the admission of Petitioner's incriminating statements to the police, which were allegedly "maliciously tainted" and "faulty"; (3) that trial counsel was ineffective for failing to insist on a pre-trial suppression hearing; (4) that the recorded telephonic conversation was wrongfully admitted in "violation" of "federal and state constitutional law"; and (4) that the tapes, even if admitted, do not prove "when the sexual activity began or ended" or contain a

direct "admission to sexual activity." (*See generally* Pet'r's Obj's 1–3.)[3, 4] The Court will

address the Objections as needed.

### 1. Suppression Hearing

In his Petition, Petitioner argued that trial counsel was ineffective for failing to request a

pre-trial suppression hearing regarding the admissibility of his inculpatory statements to the

police, (Pet'r's Mem. 5), and that, further, to the extent the trial court "incorporated the

suppression into the trial," its findings on the issue were "defective," (*id.* at 7). Judge Smith

concluded that Petitioner had failed to raise an argument about the sufficiency of the trial court's

findings on direct appeal and therefore, the claim was unexhausted. (R&R 12–13.) However,

Judge Smith further concluded that this claim should be "deemed exhausted and procedurally

barred because there remains no procedural mechanism for Petitioner to raise this claim in state

court." (*Id.* at 13.) As to the claim for ineffective assistance of counsel based on trial counsel's

failure to request a pre-trial suppression hearing, Judge Smith concluded that the record showed

that trial counsel did not "waive" the suppression issues but rather agreed to incorporate them

into the bench trial and that, in any case, such a decision would not constitute ineffective

assistance of counsel, as Petitioner failed to establish that there were any deficiencies in

Petitioner's waiver of his *Miranda* rights. (*Id.* at 10–12.)

---

[3] According to the docket, Petitioner is counseled, and Petitioner's counsel filed his original Petition, (*see generally* Pet.; Pet'r's Mem.), but Petitioner appears to have filed his Objections on his own, (*see generally* Pet'r's Obj's). Erring on the side of caution, the Court treats the Objections as a pro se submission and therefore reads Petitioner's Objections "liberally," interpreting them to "raise the strongest arguments [they] suggest[]." *Silva v. Keyser*, 271 F. Supp. 3d 527, 538 (S.D.N.Y. 2017) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)) (alterations omitted).

[4] When citing to the Objections, the Court refers to the ECF-stamped page numbers at the top right-hand corner of each page.

In his Objections, Petitioner contends that the Appellate Division erred in determining that the trial court incorporated the suppression issue into the trial, while citing New York Criminal Procedure Law ("NYCPL") § 710.10, and that, instead, the Appellate Division should have noted that, pursuant to NYCPL § 710.40, the motion should have been separately determined before the commencement of the trial. (Pet'r's Obj's 1.) The Court liberally construes this objection to mean that Judge Smith erred in concluding that any "stand-alone" claim as to the trial court's failure to sufficiently address the suppression issues on the record should be dismissed. (R&R 13.) [5] Petitioner also argues that trial counsel's concession that, for bench trials, the judge may incorporate suppression hearings into the trial itself was "truly reductio ad absurdum and in diametrical opposition to not only New York State constitutional law, but[] federal constitutional law as well." (Pet'r's Obj's 2 (quotation marks omitted).) Petitioner also argues that it was constitutional error for trial counsel to allow Petitioner's inculpatory statements to the police to "go unchallenged into evidence." (*Id.*) The Court liberally construes these objections to mean that Judge Smith erred in concluding that trial counsel's failure to object to the incorporation of the suppression hearing and to the admissibility of Petitioner's statements to the police did not constitute ineffective assistance of counsel. (R&R 9–12.)

---

[5] Out of an "abundance of caution," Judge Smith addressed both of Petitioner's potential arguments that the suppression hearing issue was a "stand-alone claim" as to the trial court's failure to sufficiently address the suppression issues on the record and that the suppression hearing issue was simply one of the bases for Petitioner's claim of ineffective assistance of counsel. (R&R 2 n.3.) Neither the Petition nor the Objections makes clear whether Petitioner intended to proffer both or either of these arguments, but the Court considers both of them. (*See* Pet'r's Mem. 5–8; *see generally* Pet'r's Obj's.)

### a. Sufficiency of Trial Court Findings

The Court agrees with Judge Smith's conclusions that Petitioner failed to timely raise the argument that the trial court did not sufficiently address the suppression issues on the record. Nowhere in Petitioner's (counseled) Appellate Brief is there any argument that could possibly pertain to the sufficiency of the trial court's findings regarding the voluntariness of Petitioner's inculpatory statements to the police. (*See generally* Resp't's Mem. Ex. 1.i ("Pet'r's App. Brief") (Dkt. No. 11-3).) On direct appeal, in relevant part, Petitioner argued only that "defense counsel had waived a pretrial [suppression] hearing regarding the admissibility of [Petitioner's inculpatory] statement [to the police]." (*Id.* at 12.) Throughout the substance of this argument, Petitioner refers only to the ineffectiveness of trial *counsel's* failure to object, not to the sufficiency of the trial *court's* findings on the issue. (*Id.* at 20.) Instead, Petitioner first raised the insufficiency of the trial court's suppression findings in his application for leave to appeal to the New York Court of Appeals, stating that "the trial court devoted a total of five lines to the [suppression] problem"; yet, even in this discussion, Petitioner related the purported deficiencies back to trial counsel's failure to insist on "proceed[ing] with the [suppression] hearing *prior to* trial." (Resp't's Mem. Ex. 1 ("Pet'r's Leave to Appeal") 4 (Dkt. No. 11-3) (emphasis in original).)

To the extent Petitioner's Objections can be construed to advocate for a stand-alone claim regarding the trial court's deficient suppression findings, "raising a federal claim for the first time in an application for discretionary review to a state's highest court is insufficient for exhaustion purposes." *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Moreover, the claim is now procedurally barred because "New York procedural rules bar its state courts from hearing . . . claims that could have been

raised on direct appeal but were not." *Read v. Thompson*, No. 13-CV-3661, 2016 WL 165715, at

*7 (S.D.N.Y. Jan. 13, 2016) (citation omitted). "If . . . the state courts would deem [Petitioner's

federal claim] procedurally barred, [this Court] must deem the claim procedurally defaulted."

*Carvajal*, 633 F.3d at 104 (citation, quotation marks, and alteration omitted). Petitioner is also

unable to "escape dismissal on the merits of a procedurally defaulted claim" because he has not

made any demonstration of "cause for the default and prejudice" or that he is "actually innocent

of the crime for which he was convicted." *Id.* (citation and quotation marks omitted); *see also*

*Cabrera v. New York*, No. 16-CV-7938, 2018 WL 5276425, at *15 (S.D.N.Y. Oct. 23, 2018)

("The only exceptions to [the procedural default] rule are if [] [P]etitioner establishes either

cause for the default and prejudice or that he is actually innocent of the crime for which he was

convicted." (citation and quotation marks omitted)).

The Court thus agrees with Judge Smith that Petitioner is procedurally barred from

raising this claim, and, accordingly, the claim is denied. (R&R 13.)

### b. Ineffective Assistance of Counsel

The Sixth Amendment of the United States Constitution provides that a criminal

defendant shall enjoy the right to effective assistance of counsel. *See Bobby v. Van Hook*, 558

U.S. 4, 7 (2009) (per curiam). A claim for ineffective assistance of counsel is analyzed under the

*Strickland* two-part test: to be entitled to relief, a Petitioner must show that (1) his attorney's

conduct was constitutionally deficient because it fell below an "objective standard of

reasonableness," *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), and that (2) Petitioner

was prejudiced by the ineffective representation, that is, but for the deficiency, there is a

reasonable probability that "the result of the proceeding would have been different," *id.* at 694.

To determine whether counsel's conduct is deficient under the first prong, "the court must determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Lindstadt v. Keane*, 239 F.3d 191, 198–99 (2d Cir. 2001) (alterations and quotation marks omitted). The Court "must consider all the circumstances, [and] must make every effort to eliminate the distorting effects of hindsight." *Id.* at 199 (alterations and quotation marks omitted). Indeed, Petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 446 U.S. at 689.

To satisfy the second prong, Petitioner must demonstrate "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[A] court hearing an ineffectiveness claim must consider the totality of the evidence . . . [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 695–96. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Here, at trial, defense counsel stated that "[o]utside of anything that was placed on any 710.30 form, hearings are *not* waived."[6] (Resp't's Mem. Ex. 2 ("Trial Tr.") 297 (Dkt. Nos. 11-

---

[6] NYCPL § 710.30 provides that "[w]henever the people intend to offer at a trial . . . evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible . . . , they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered."

4–7) (emphasis added).) Trial counsel clarified that, as to items disclosed pursuant to NYCPL

§ 710.30, suppression "[h]earings are incorporated with respect to this trial" because, in a bench

trial, "[t]he [trial c]ourt is the trier of fact." (*Id.*) In fact, the trial court agreed with defense

counsel that any suppression objections were "to be incorporated . . . within the context of trial."

(*Id.*) In accordance with this procedure, the trial court asked the police officer witness a number

of questions regarding the circumstances surrounding Petitioner's inculpatory statements to

evaluate voluntariness. (*Id.* at 279–305.) The trial court then accepted the statement into

evidence over no objections from Petitioner's trial counsel. (*Id.* at 305.)

The Court agrees with Judge Smith that it was not constitutionally ineffective assistance

for trial counsel to consent to incorporating the suppression hearing into the trial. (R&R 12.) To

begin, New York State appellate courts have noted that trial courts may "properly conduct[] a

combined pretrial suppression hearing and nonjury trial." *People v. Restrepo*, 744 N.Y.S.2d 868,

868 (N.Y. App. Div. 2002); *see also People v. Mason*, 758 N.Y.S.2d 566, 566 (N.Y. App. Div.

2003) (holding that defendants "waive[ the] contention" that the trial court "erred in failing to

conduct a pretrial [suppression] hearing" where, as here, a defendant "consented to the

concurrent suppression hearing and bench trial conducted by the court." (collecting cases)). Nor

is it a violation of federal law to decide pretrial suppression motions at trial. *See United States v.

Ardines*, 293 F.R.D. 117, 127 (E.D.N.Y. 2013) (finding it proper for magistrate judge to

incorporate a suppression hearing into the trial); *see also Sparks v. Burge*, No. 06-CV-6965,

2009 WL 8690118, at *4 (S.D.N.Y. Sept. 23, 2009) (finding no constitutional violation where

the trial court "made findings concerning the admissibility of the . . . evidence" "in conjunction

with the bench trial"), *adopted by* 2012 WL 4479250 (S.D.N.Y. Sept. 28, 2012). Accordingly,

trial counsel's decision not to insist on a separate, pre-trial suppression hearing was aligned with

state and federal law and thus was far from falling below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88.

Even if trial counsel's decision not to pursue a pretrial suppression hearing was error, Petitioner has also failed to establish that trial counsel's failure was "so serious as to deprive[] [ Petitioner] of a fair trial, a trial whose result is reliable." *Strickland*, 446 U.S. at 687. The trial court's colloquy with the officer who took Petitioner's inculpatory statement revealed that Petitioner was not handcuffed when he was brought into the station to give a statement, that the interviewing officers asked Petitioner whether he needed anything to drink or to use the bathroom, that Petitioner was read *Miranda* rights from a sheet prior to giving the statement, that Petitioner was given time to review his statement and make any corrections, which Petitioner did not do, that the interviewing officer once again reminded Petitioner of his *Miranda* rights, and that, throughout the interview, Petitioner appeared to understand his *Miranda* rights but did not invoke any of them, including his right to remain silent or to request counsel. (Trial Tr. 279–305.) Given this record, there is nothing close to a "reasonable probability that," had trial counsel objected to the admission of Petitioner's statement following an extensive colloquy about the voluntariness of the statement, the trial court would have disallowed the evidence. *Strickland*, 466 U.S. at 696; *see also Tinch v. Racette*, No. 11-CV-04441, 2012 WL 3541823, at *3–4 (S.D.N.Y. Aug. 14, 2012) (rejecting the petitioner's habeas claim that the trial court improperly admitted inculpatory statements to the police where petitioner "agreed to sign a written statement," was "offered food, drink and bathroom breaks," and "was read his *Miranda* rights multiple times and waived them"); *Maldonado v. Burge*, 697 F. Supp. 2d 516, 525–28 (S.D.N.Y. 2010) (noting that, at minimum, Petitioner would need to show "a reasonable probability that the suppression motion would succeed, and quite possibly that the suppression

motion would in fact succeed"). It also follows that there is no reasonable probability that the result would have been different had trial counsel insisted on conducting the suppression hearing prior to trial, given the persuasive evidence that the statements were, in fact, voluntary. "*Strickland* does not require trial counsel to engage in an exercise in futility." *Francis v. Conway*, No, 09-CV-3391, 2010 WL 23327, at *12–13 (E.D.N.Y. Jan. 5, 2010) (holding that the petitioner failed to establish ineffective assistance where trial counsel "conceded the voluntariness of [the] petitioner's statement to the Assistant District Attorney" in light of evidence that the petitioner had received his *Miranda* warnings twice before giving his statement).

Therefore, Petitioner has failed to show that he received constitutionally ineffective assistance of counsel on this point, and the Court denies Petitioner's claim.[7] (R&R 12.)

### 2. Telephonic Recordings

In the Petition, Petitioner argued that trial counsel was ineffective for failing to move to suppress the inculpatory recorded telephone conversations between Petitioner and the victim. (Pet'r's Mem. 8–9). Judge Smith concluded that such a claim "is deemed exhausted and

---

[7] The Court notes that it could also dismiss Petitioner's claim on the alternative ground that the state court already adjudicated this claim on the merits and dismissed it. AEDPA states that, "once a state court has adjudicated a petitioner's claim on the merits, a federal court may not grant a habeas petition on that claim unless that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *See Aparicio*, 269 F.3d at 93 (quoting 28 U.S.C. § 2254(d)(1)). The Appellate Division explicitly noted both that "[t]here is no merit to [Petitioner's] contention that his attorney waived a pretrial suppression hearing," because "the trial court incorporated the suppression issue into the trial" and that "the record as a whole demonstrates that [Petitioner] was afforded the effective assistance of counsel." *Brown*, 962 N.Y.S. 2d at 912. As discussed, based on precedent in both federal cases allowing for the incorporation of suppression issues into bench trials, this conclusion does not involve "an unreasonable application of[] clearly established Federal law." 28 U.S.C. § 2254(d)(1).

procedurally defaulted because Petitioner has no mechanism to raise this claim in state court."
(R&R 14.) In his Objections, Petitioner argues that admission of the recordings into evidence constituted "plain error." (Pet'r's Obj's 2–3.) Construed liberally, the Court interprets Petitioner's Objections to argue that Judge Smith erred in concluding that trial counsel was not ineffective for failing to move to suppress recorded telephone conversations between Petitioner and the victim. (*See* R&R 15.) Moreover, Petitioner, for the first time in his Objections, also contests the reliability of the recordings, noting that there were no remarks in the recordings regarding "when the sexual activity began or ended" and that there was no direct "admission to sexual activity" in the content of the phone calls. (Pet'r's Obj's 3.)

### a. Reliability of the Recordings

To the extent that Petitioner is attempting to contest the reliability of the recordings and the reasonableness of the trial court's reliance on the evidence in reaching the final determination of guilt, such an argument is procedurally barred. On direct appeal, Petitioner's only articulated basis for arguing that the "evidence was insufficient" to convict him was that the evidence did not sufficiently establish that the victim was less than 13 years old at the time of the underlying incidents. (Pet'r's App. Br. 26–27.) Petitioner made no arguments regarding the reliability or persuasiveness of the telephonic recordings on direct appeal. Petitioner also made no such arguments in his application for leave to appeal to the New York Court of Appeals, referring only to the recorded conversations to the extent that trial counsel's failure to object to their admissibility constituted constitutionally deficient assistance of counsel. (*See* Pet'r's Leave to Appeal 5.) Because Petitioner "could have brought [this] claim . . . on direct appeal, but failed to do so, the claim is barred as procedurally defaulted." *United States v. Romain*, No. 13-CV-0724, 2019 WL 4493463, at *2 (S.D.N.Y. Sept. 19, 2019) (citing *United States v. Thorn*, 659 F.2d 227,

231 (2d Cir. 2011)). Nor has Petitioner established "cause for the default and prejudice" for the failure to raise this issue on direct appeal or that he is "actually innocent of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (citation and quotation marks omitted); *see also Cabrera*, 2018 WL 5276425, at *15 ("The only exceptions to [the procedural default] rule are if [] [P]etitioner establishes either cause for the default and prejudice or that he is actually innocent of the crime for which he was convicted." (citation and quotation marks omitted)).

Any such claims for relief are therefore dismissed.

### b. Ineffective Assistance of Counsel

The Court further agrees with Judge Smith that Petitioner's claim of ineffective assistance of counsel as to trial counsel's failure to move to suppress the recorded phone conversations is also procedurally barred. (R&R 14–15.)

"While the New York Court of Appeals has held that[] generally, the ineffectiveness of counsel is not demonstrable on the main record, some ineffective assistance claims, including those based solely on failures to object, may indeed be properly considered on direct appeal as record-based allegations." *Finley*, 2016 WL 47333, at *10 (citations, quotation marks, and alterations omitted); *see also Aparicio*, 269 F.3d at 93 ("New York law prohibits review of a claim on collateral review when the defendant unjustifiably fails to raise the claim on direct appeal." (citing NYCPL § 440.10(2)(c))); *Acevedo v. Capra*, 13-CV-5579, 2014 WL 1236763, at *1 (E.D.N.Y. Mar. 25, 2014) ("Under New York law, ineffective assistance of counsel claims that are based on errors or omissions that appear on the record of a defendant's direct appeal must be raised on that direct appeal or they are deemed forfeited.").

Here, Petitioner's main contention is that trial counsel failed to object to the admission of the recorded telephone conversations between Petitioner and the victim. Although Petitioner

21

concedes that "New York permits the taping of telephone conversations if one party consents," Petitioner posits that the victim, who was purportedly a minor at the time, "legally . . . lacked the capacity to give consent to the taping," making the recording illegal and inadmissible. (Pet'r's Mem. 9.) However, all the information regarding the legality and admissibility of the recording was apparent when Petitioner filed his direct appeal; indeed, Petitioner himself argued that the purported error of allowing the "per se illegal" recording into evidence was "constitutional error [] plain and evident from the record." (Pet'r's Reply 3 (alteration omitted).) However, nowhere in Petitioner's direct appeal to the Appellate Division is there any argument pertaining to trial counsel's failure to object to the admission of the telephonic records. (*See generally* Pet'r's App. Brief.) Petitioner first raised this argument in his application for leave to file an appeal with the New York Court of Appeals, (Pet'r's Leave to Appeal 5), but "raising a federal claim for the first time in an application for discretionary review to a state's highest court is insufficient for exhaustion purposes." *Senkowski*, 374 F.3d at 183 (citing *Castille*, 489 U.S. at 351). Moreover, the claim is now procedurally barred by state law because NYCPL § 440.10(2)(c) clarifies that a collateral attack of a conviction fails where the defendant failed to "raise such ground or issue" on direct appeal. N.Y. Crim. Proc. Law § 440.10. Petitioner is also unable to "escape dismissal on the merits of a procedurally defaulted claim" because he has not made any demonstration of "cause for the default and prejudice" or that he is "actually innocent of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (citation and quotation marks omitted); *see also Cabrera*, 2018 WL 5276425, at *15 ("The only exceptions to [the procedural default] rule are if

[] [P]etitioner establishes either cause for the default and prejudice or that he is actually innocent of the crime for which he was convicted." (citation and quotation marks omitted)).[8]

Therefore, the Court adopts Judge Smith's recommendation as to this claim and dismisses it. (R&R 15.)

## II.  Conclusion

The Court, having conducted a thorough review of the remainder of the R&R, finds no error, clear or otherwise. The Court adopts the outcome of Judge Smith's R&R. The Petition is therefore dismissed in its entirety.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies,

---

[8] The Court notes that, even if Petitioner was not procedurally barred from making this argument, Petitioner has not shown that, "but for counsel's [purported] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The evidence against Petitioner beyond the recording included his own confession to the police, extensive testimony from the victim, and testimony from another witness. (*See* R&R 18.) Under the circumstances, Petitioner has not shown that a hypothetically successful objection to the recorded telephone conversations would "undermine confidence in the outcome" of his trial. *Strickland*, 466 U.S. at 694; *see also Sanabria v. Martuscello*, No. 15-CV-1705, 2019 WL 2528376, at *8 (S.D.N.Y. Feb. 8, 2019) (report and recommendation) (holding that, in light of "overwhelming" evidence of guilt, even counsel's "objectively unreasonable" decisions would not cause prejudice); *Lobacz v. United States*, No. 16-CV-3386, 2018 WL 472858, at *7 (E.D.N.Y. Jan. 18, 2018) ("[G]iven the overwhelming evidence of guilt, there is no reasonable probability that the result of the trial would have been different" had counsel made the underlying motion.), *aff'd* 764 F. App'x 1 (2d Cir. 2019), *cert. denied*, No. 19-5255, 2019 WL 4923163 (Oct. 7, 2019).

Furthermore, the Appellate Division explicitly found that "the record as a whole demonstrates that [Petitioner] was afforded the effective assistance of counsel." *Brown*, 962 N.Y.S.2d at 246. This finding is subject to 28 U.S.C. § 2254(d)(1), and Petitioner does not explain how the Appellate Division's conclusion was "contrary to, or . . . an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter judgment in favor of Respondent and close the case.

SO ORDERED.

DATED:     October 16, 2019
           White Plains, New York

           KENNETH M. KARAS
           UNITED STATES DISTRICT JUDGE